UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS HAMANN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 17-cv-11292-ADB |
| STUART A. CARPENTER, LESLIE H. WEXNER, and COPLEY MOTORCARS CORPORATION, | * |
| | * |
| | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Thomas Hamann, the exclusive sales agent for a 1953 Ferrari 375MM Pininfarina Spyder (the "Ferrari"), lost out on a sizeable commission when the buyer switched lanes and dealt directly with the seller. Hamann's five-count complaint asserts claims for tortious interference with contractual and business relations, and vicarious liability related thereto, against Defendants Stuart A. Carpenter, who purchased the Ferrari, Leslie H. Wexner, the principal on whose behalf Carpenter negotiated the sale, and Copley Motorcars Corporation ("Copley"), a car dealership owned by Carpenter.[1] Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim. [ECF No. 10]. For the reasons stated herein, the Court <u>GRANTS</u> Defendants' motion and <u>DISMISSES</u> the complaint without prejudice. Hamann is granted 30 days from the date of this Order to file an amended complaint.

---

[1] Hamann brings claims for tortious interference with business relations (counts I and III) and tortious interference with contractual relations (counts II and IV) against Carpenter and Copley. Count V asserts that Wexner is liable for the tortious conduct alleged in counts I−IV based on a theory of respondeat superior.

## I. BACKGROUND

The following allegations in the complaint are accepted as true for the purposes of evaluating the motion to dismiss. Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). Hamann is in the business of purchasing and selling high-end motor vehicles. Compl. ¶ 6. On behalf of an individual named Vincenzo Scandurra, who lived in Monaco, Italy, Hamann acted as the exclusive sales agent for the Ferrari. Id. ¶¶ 7, 14. The Ferrari was originally part of the collection of Emilio Gnutti in Brescia Italy; Scandurra, who eventually intended to sell the Ferrari, agreed to purchase it from Gnutti and paid a deposit. Id. ¶¶ 14−15. Scandurra informed Hamann that he was under significant pressure to find a buyer for the Ferrari in order to have the funds necessary to make the final payments owed to Gnutti. Id. ¶ 17.

On or around July 21, 2013, Hamann informed Carpenter of his exclusive sales agreement and offered to broker a sale of the Ferrari to him for $15 million. Id. ¶¶ 9−12. Carpenter responded that neither he nor his principal, Wexner, was interested in purchasing the Ferrari. Id. ¶13. Hamann at some point secured an offer of $10.5 million from a different prospective buyer, Dana Mecum, and Scandurra instructed Hamann to complete the sale with Mecum. Id. ¶ 18. Hamann then executed an agreement with Scandurra on Mecum's behalf for the purchase of the Ferrari. Id. ¶¶ 18−19. On August 28, 2013, Hamann arranged for Mecum to make a deposit of €2 million. Id. ¶ 19.

On or about August 30, 2013, Scandurra informed Hamann that a third party, the owner of a dealership in Milan, had contacted Gnutti directly and offered approximately $12.5 million to purchase the Ferrari; that Copley and/or Carpenter (acting on Wexner's behalf) was also involved on the purchasing side of the proposed sale; and that Scandurra would need to sell the Ferrari to this new buyer. Id. ¶¶ 21−22. Hamann immediately sent an email to Carpenter to

advise him that Hamann's client had contracted to purchase the Ferrari and made a down payment. Id. ¶ 24. He followed up with additional emails and phone calls to remind Carpenter that Hamann was the exclusive sales agent for the Ferrari. Id. ¶¶ 25−29. On September 3, 2013, after not answering to several of Hamann's communications, Carpenter responded that he did not think Hamann had the exclusive sales rights to the Ferrari because "seven other dealers would have offered him the [Ferrari] after [Hamann] for the same price." Id. ¶ 30. Because the sale of the Ferrari to Mecum was not completed, Hamann asserts that he lost a commission of €550,000 as a result of Defendants' interference with his exclusive sales agreement with Scandurra and with the contract for Mecum's purchase of the Ferrari. Id. ¶¶ 33−35.

## II.   LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Assessing the plausibility of a claim is a two-step process. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Rodriguez-Reyes, 711 F.3d at 53 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

## III. DISCUSSION

Defendants move to dismiss Hamann's claims for tortious interference with contractual and business relations against Carpenter and Copley (counts I through IV) on the grounds that the complaint fails to plausibly allege that Defendants acted with improper means or motive or that their conduct caused any damages. Hamann's respondeat superior claim (count V), which seeks to hold Wexner liable for Carpenter and Copley's tortious acts, also collapses if the allegations in support of counts I−IV are insufficient. See Sullivan v. Trustees of Boston Univ., 46 N.E.3d 599, 2016 WL 873036, at *2 n.9 (Mass. App. Ct. Mar. 8, 2016) ("Where all underlying tort claims failed, the plaintiff's respondeat superior claim . . . also failed."); cf. O'Brien v. Milano, 75 N.E.3d 1148, 2017 WL 121069, at *2 (Mass. App. Ct. Jan. 12, 2017) (no basis for respondeat superior claim against employer where employee committed no tortious act).

To state a claim for tortious interference with contractual relations, "[t]he plaintiff must prove that (1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract [by inhibiting the third party's or the plaintiff's performance thereof, depending on the theory]; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." O'Donnell v. Boggs, 611 F.3d 50, 54 (1st Cir. 2010) (quoting Harrison v. NetCentric Corp., 744 N.E.2d 622, 632 (Mass. 2001)). A claim for tortious interference with business relations requires a similar set of elements: "(1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 339 (D.

4

Mass. 2007) (citing Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 245 (Mass. App. Ct. 2004)).

The central question at this stage is whether Hamann has plausibly alleged that Defendants' conduct was improper in means or motive. "Improper" requires "something more than intentional interference," United Truck Leasing Corp v. Geltman, 551 N.E.2d 20, 23 (Mass. 1990), and has been characterized as "'actual malice,' *i.e.*, a 'spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 864 N.E.2d 518, 541 (Mass. App. Ct. 2007) (quoting Shea v. Emmanuel Coll., 682 N.E.2d 1348, 1351 (Mass. 1997)). "Improper means can include 'violation of a statute or common-law precept, *e.g.*, by means of threats, misrepresentation or defamation' including 'misrepresent[ation] of facts.'" Corporate Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 241 (D. Mass. 2013) (quoting Cavicchi v. Koski, 855 N.E.2d 1137, 1142 (Mass. App. Ct. 2006)); see TalentBurst Inc. v. Collabera, Inc., 567 F. Supp. 2d 261, 269 (D. Mass. 2008) (improper means include "making fraudulent statements or threats").

The "legitimate advancement of [the defendant's] own economic interest," however, is not considered improper. Pembroke Country Club, Inc., 815 N.E.2d at 246; see United Truck Leasing, 551 N.E.2d at 24 (motive "to benefit [defendant's] customers and himself financially" was not improper). Here, Hamann states that Carpenter was aware of his exclusive right to sell the Ferrari but nonetheless directly negotiated with Gnutti and/or Scandurra. These allegations plausibly assert intentional interference but lack even a hint of malice or spitefulness, both as to means or motive. Other than failing to respond immediately to Hamann's communications, which did not go unreturned for more than a few days, the complaint contains no information as to how or why Defendants pursued and completed the direct sale of the Ferrari from Gnutti

5

and/or Scandurra.[2] The allegations do not suggest that Defendants acted out of malice as opposed to economic self-interest: Carpenter declined Hamann's offer of $15 million; Mecum offered $10.5 million; and Carpenter offered $12.5 million directly to the owner, thereby cutting Hamann out of the transaction. The $12.5 million offer was less than Hamann's proposal but more than the seller's next best option. The reasonable inference to be drawn is that Defendants simply sought to "'eliminate the middleman' and save money."[3] TalentBurst, 567 F. Supp. 2d at 269 (granting motion to dismiss tortious interference claims against defendant company for hiring the employee of its consultant, where all that the company did was recruit the employee and offer him a job).

This deficiency in the complaint is presumably why Hamann filed an affidavit with his opposition brief which adds the allegation that "Carpenter pressured and induced Scandurra to sell" the Ferrari. [ECF No. 18 at ¶ 18]. Regardless of whether this new allegation cures the infirmities in the complaint, the affidavit is an inappropriate means of injecting allegations into the pleadings and may not be considered when deciding a motion to dismiss under Rule 12(b)(6). See Massachusetts Institute of Tech. v. Shire PLC, No. 13-cv-10020-MLW, 2014 WL 404696, at *8 (D. Mass. Feb. 2, 2014) (plaintiffs' affidavits that were not referenced in the complaint may not be considered under Rule 12(b)(6)); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56."). Accordingly, because the complaint is devoid of any

---

[2] Carpenter's statement that he did not believe Hamann had the exclusive right to sell the Ferrari, because other dealers had made similar offers, also suggests that Carpenter was misinformed or mistaken, as opposed to malicious.

[3] There is some discrepancy in the complaint as to whether Defendants made an offer of $12.5 million or €12.5 million, Compl. ¶¶ 21, 30−31, which Hamann may clarify in an amended complaint.

allegations of improper means or motive, Hamann fails to state a claim against Carpenter and Copley and, consequently, lacks any basis for his respondeat superior claim against Wexner.[4]

## III. CONCLUSION

Considering that the case remains at an early stage, and that Hamann attempted (albeit improperly) to amend the complaint through his affidavit, the Court will allow Hamann 30 days from the date of this Order to file an amended complaint. Accordingly, the motion to dismiss [ECF No. 10] is <u>GRANTED</u> and the complaint is <u>DISMISSED</u> without prejudice.

**SO ORDERED.**

April 30, 2018

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[4] Although the Court need not address whether Hamann has plausibly stated that Defendants caused the alleged damages because the complaint is dismissed without prejudice for failure to plead improper means or motive, Hamann may bolster his allegations of causation in an amended complaint, in light of the arguments raised in the motion to dismiss.