UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS HAMANN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-11292-ADB |
| | * | |
| STUART A. CARPENTER, LESLIE H. | * | |
| WEXNER, and COPLEY MOTORCARS | * | |
| CORPORATION, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Thomas Hamann, a high-end car broker, brings this action against Defendants

Stuart A. Carpenter, Copley Motorcars Corporation ("Copley"), and Leslie H. Wexner (together

with Carpenter and Copley, "Defendants"), alleging that Carpenter tortiously interfered with

Hamann's exclusive sales contract concerning a rare and expensive Italian sportscar (the "Car")

and that, as Carpenter's principal, Wexner is vicariously liable for Carpenter's misconduct.

[ECF No. 34 ("Am. Compl.")].  Currently before the Court are Wexner's motion for judgment

on the pleadings, [ECF No. 62], and Hamann's motion for a jury trial, [ECF No. 60].  For the

reasons set forth below, Wexner's motion is DENIED and Hamann's motion is DENIED with

leave to renew.

I.      BACKGROUND

The Court assumes the parties' familiarity with Hamann's factual allegations and refers

the reader to its Order on Defendants' previous motion to dismiss, [ECF No. 42 at 2–3], and the

First Circuit's subsequent opinion, [ECF No. 47 at 2–4], for a complete summary.  In short,

Hamann alleges that Carpenter, acting as Wexner's agent, threatened Vincenzo Scandurra, an individual with whom Hamann had a potentially lucrative contract granting Hamann the exclusive right to sell the Car, to induce Scandurra to breach.

In the amended complaint, Hamann asserts five claims: (1) a claim against Carpenter for "tortious interference with an advantageous business relationship" (Count I), [Am. Compl. at 1–4][1]; (2) a claim against Carpenter for "tortious interference with an existing contract" (Count II), [id. at 5–8]; (3) a claim against Copley for "tortious interference with a business expectancy" (Count III),[2] [id. at 8–11]; (4) a claim against Copley for "tortious interference with an existing contract" (Count IV), [id. at 12–15]; and (5) a claim against Wexner for "respondeat superior" (Count V), [id. at 15]. On January 11, 2019, the Court granted Defendants' motion to dismiss the amended complaint in its entirety. [ECF No. 42]. On appeal, the First Circuit reversed "the [C]ourt's dismissal of Hamann's claim of tortious interference with a contractual relationship" but affirmed dismissal of Hamann's "other tort and Chapter 93A claims." [ECF No. 47 at 16]. Thus, Counts II, IV, and V remain pending.

After remand, Defendants answered, [ECF No. 50], and the parties filed a joint proposed schedule, [ECF No. 53], which the Court endorsed, [ECF No. 57]. On September 11, 2020, Hamann filed a motion for a jury trial under Federal Rule of Civil Procedure 39(b), [ECF No. 60], which Defendants opposed, [ECF No. 61]. On September 21, 2020, Wexner moved for judgment on the pleadings, [ECF No. 62], which Hamann opposed, [ECF No. 64].

---

[1] Ordinarily, the Court would refer to allegations in a complaint by paragraph number, but doing so here would be confusing because the complaint repeats paragraph numbers.

[2] The factual allegations underlying Counts I and III are identical, and the Court views Hamann's decision to use "advantageous business relationship" in one and "business expectancy" in the other as a ministerial error.

## II.    DISCUSSION

### A.    Motion for Judgment on Pleadings

Wexner argues that because Hamann seeks to hold him vicariously liable only in connection with Count I (i.e., Hamann's tortious interference with an advantageous business relationship claim against Carpenter) and the First Circuit affirmed dismissal of Count I, the respondeat superior claim against Wexner (Count V) must be dismissed as a matter of law. [ECF No. 63 at 2–4].  Hamann responds that because he is, in fact, seeking to hold Wexner vicariously liable for the misconduct alleged in Counts I–IV, his claim against Wexner need not be dismissed in light of the First Circuit's opinion, which reversed the Court's dismissal of Counts II and IV.  [ECF No. 64 at 7–8].

Wexner's argument seems to be premised primarily on the fact that Count V of the amended complaint incorporates by reference a subset of the allegations in Count I.  See [Am. Compl. at 15 ("Paragraphs one through thirty of the First Count are hereby incorporated as paragraphs one through thirty of the Fifth Count as if fully set forth.")].  According to Wexner, this indicates that Hamann is asserting a vicarious liability claim against Wexner only in connection with Count I.  Wexner's argument fails.  Although the amended complaint is inartfully worded, the most logical reading is that Count V is incorporating the factual allegations appearing in paragraphs one through thirty of Count I, not that Hamann is seeking to hold Wexner vicariously liable only in connection with one particular claim.  Simply put, narrowly reading Count V to allege that Wexner is vicariously liable only for Carpenter's alleged tortious interference with an "an advantageous business relationship" (Count I) but not Carpenter's alleged tortious interference with "an existing contract" (Count II) does not make sense.  Further, if Hamann meant to allege a respondeat superior claim against Wexner only in

connection with Count I (asserted solely against Carpenter), his allegation, in Count V, that "[a]t all times relevant to this complaint, *Copley*[] was acting as an agent on behalf of Wexner within the scope of said agency," [id. at 15 (emphasis added)], would be entirely superfluous.  Finally, the First Circuit's opinion makes clear that Hamann's respondeat superior claim against Wexner relates to both flavors of tortious interference and is therefore still viable even though Counts I and III have been dismissed.  See [ECF No. 47 at 4–5 ("Instead, Hamann sued Carpenter, Copley[], *and Wexner*, as Carpenter's principal, for tortious interference with an advantageous business relationship, *tortious interference with an existing contract*, and violations of Massachusetts's Consumer Protection Law . . . ." (emphasis added)); id. at 14 ("For the foregoing reasons, Hamann's complaint provides too little clarity and too little substance to preserve his common law claims other than his principal claim that Carpenter *and those who might be variously liable for his torts* (*i.e.*, Copley[] and *Wexner*) are liable for tortiously causing Scandurra to breach his exclusive-seller agreement with Hamann." (some emphasis supplied))].

Thus, Hamann has stated a plausible respondeat superior claim against Wexner, and Wexner's motion for judgment on the pleadings, [ECF No. 62], is therefore DENIED.[3]

## B.     Motion for a Jury Trial

Hamann did not demand a jury trial in any of the three complaints he has filed in this case, see [ECF Nos. 1, 24, 34], and has therefore waived his right to a jury trial, see MIT Fed. Credit Union v. Cordisco, No. 19-cv-11297, 2020 WL 6871014, at *2 (D. Mass. Nov. 20, 2020)

---

[3] Wexner also seems to argue that in the parties' joint status report, Hamann agreed that the First Circuit had affirmed dismissal of Count V.  [ECF No. 63 at 3].  Wexner's reading of the status report is somewhat tortured, and, in any event, the Court puts little stock in it, especially given the fact that in the same filing, Hamann specifically contemplated potentially deposing Wexner, [ECF No. 53 at 3].

("A litigant waives his or her right to a jury trial unless he or she files a demand pursuant to Rule 38 or reasonably relies on the properly filed jury demand of another party.").  Still, pursuant to Federal Rule of Civil Procedure 39(b), "even if no jury demand has been timely filed, the district court has wide discretion to order a trial by jury on the motion of either party."  Id.  On September 11, 2020, Hamann filed such a motion.  [ECF No. 60].  The First Circuit has identified a number of factors that district courts should consider when deciding Rule 39(b) motions:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

T G Plastics Trading Co. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 36 (1st Cir. 2014) (quoting Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir. 1983)).

Although the Court can, at this point, evaluate some of the T G Plastics factors—such as the length of delay in requesting a jury trial (over three years) and the reason for Hamann's tardiness (carelessness at best)—the Court cannot evaluate all of them.  Notably, without a more complete factual record and without knowing if summary judgment motions will be filed, and if so, what issues, if any, will remain once those motions are resolved, the Court is not in a position to determine whether the case will be best tried to a jury.  The Court will therefore deny Hamann's motion with leave to renew closer to trial.  The Court does note, however, its view that factual disputes are generally best resolved by a jury.

### III.    CONCLUSION

Accordingly, for the reasons set forth above, Wexner's motion for judgment on the pleadings, [ECF No. 62], is <u>DENIED</u>, and Hamann's motion for a jury trial, [ECF No. 60], is <u>DENIED</u> with leave to renew.

**SO ORDERED.**

April 22, 2021                                    /s/ Allison D. Burroughs
                                                  ALLISON D. BURROUGHS
                                                  U.S. DISTRICT JUDGE